NOT DESIGNATED FOR PUBLICATION

No. 124,986

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT H. BOOKER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Oral argument held October 17, 2023. Opinion filed April 12, 2024. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., ATCHESON, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Robert H. Booker III contends the Sedgwick County District Court erroneously denied his motion for habeas corpus relief from a conviction for aggravated sexual battery and should have held an evidentiary hearing to explore his claims that the jury wrongly found him guilty. On appeal, Booker focuses on his efforts to amend his initial motion—efforts the district court rebuffed as untimely—and on grounds, including his assertion of innocence, that should have lifted the statutory time bar. We are unpersuaded and affirm the district court.

1

We outline the salient facts of the underlying crime and the procedural history of the direct criminal case against Booker. As developed in the trial, Booker approached a young woman inside the Towne East shopping mall in Wichita in June 2012 and tried to make conversation with her. The woman testified she briefly spoke with Booker and told him she had a boyfriend and had no interest in him. She continued walking through the mall with Booker nearby. When the woman believed Booker had gone elsewhere in the mall, she went to her car in the parking lot. But Booker had followed her out and rapidly approached as she was getting into the car. The woman testified that Booker first grabbed her buttocks and then her thigh and tried to touch her crotch as she struggled with him. The woman said she kicked Booker and fended him off long enough to lock the car and drive away. As she did, Booker went back into the mall. The woman immediately called the police to report the incident.

The police obtained video from an exterior security camera showing Booker leaving the mall and returning a few minutes later corresponding to the time the woman said he attacked her in the parking lot. The woman identified Booker in a photo array investigators showed her. The State charged Booker with aggravated sexual battery under K.S.A. 2011 Supp. 21-5505(b)(1), a severity level 5 person felony.

Booker has bipolar disorder and other mental health issues. After his arrest, he went through several appointed lawyers in the criminal case and several competency hearings. The district court found Booker incompetent to stand trial in April 2014 and determined he had been restored to competency six months later. Booker underwent another examination in late November, and the district court again found him to be competent. As the trial was about to begin in mid-December, his lawyer renewed concerns about Booker's competency. The district court declined to delay the proceedings, given the results of the most recent examination. The jury found Booker

guilty in a two-day trial. Booker did not testify in his own defense. The district court later sentenced Booker to serve 55 months in prison, the high presumptive term under the guidelines, followed by lifetime postrelease supervision. We affirmed the conviction and sentence on direct appeal, and the Kansas Supreme Court denied review. *State v. Booker*, No. 113,846, 2016 WL 5012325, at *9 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1321 (2017).

Booker filed this habeas corpus motion in September 2018 just ahead of the one-year deadline in K.S.A. 2018 Supp. 60-1507(f)(1)(A). Booker crafted the motion himself using the model form developed by the Kansas Judicial Council. Rather than setting out precise factual representations and including supporting materials, Booker's motion is wholly generic. It alleges his trial lawyer was incompetent for failing to present presumably exculpatory evidence without describing what that evidence might have been. Similarly, it alleges his appointed appellate lawyer was incompetent for failing to secure oral argument in this court and failing to brief all relevant issues without identifying specific points that had been omitted. In the motion, Booker stated he would supplement the allegations of incompetent legal representation. True to his word, Booker filed about a dozen amendments to his 60-1507 motion between August 2019 and March 2020 raising various claims. He presented all of those amendments well after the one-year deadline.

The district court then appointed a lawyer to represent Booker. The lawyer filed a motion to treat the amendments and the 17 claims they raised as timely additions to the original 60-1507 filing. Over the lawyer's objection, the district court held a nonevidentiary hearing in September 2021 without Booker being present to sort out the filings. After hearing argument from the lawyers for the State and for Booker, the district court denied all of the amendments to the original 60-1507 motion as untimely and held the original motion, considered along with the record in the underlying criminal case,

3

failed to outline any legally sufficient bases for relief. The district court, therefore, denied the 60-1507 motion. Booker has appealed the ruling.

LEGAL ANALYSIS

When the district court denies a 60-1507 motion without holding an evidentiary hearing on the claims, we review the ruling as a matter of law and without any deference to the decision. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014). That's because we can review the allegations in the motion and the record in the direct criminal case just as well as the district court can. The exercise requires no weighing of conflicting evidence or credibility determinations and functionally presents a question of law.

To warrant an evidentiary hearing, a 60-1507 motion must set forth in detail factual allegations supported in the record of the underlying criminal case or by clear recitation in the motion, typically with supporting documentation, describing exceptional circumstances that if proved would establish the proceedings in the criminal case were constitutionally inadequate in a way that substantially tainted the resulting conviction. *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007); *Campbell v. State*, No. 123,830, 2023 WL 2818580, at *10 (Kan. App. 2023) (unpublished opinion) (Atcheson, J., concurring). Commonly, 60-1507 motions assert constitutionally inadequate legal representation in the underlying criminal case as the exceptional circumstance. 2023 WL 2818580, at *10. Booker has attempted to do so here.

To that end, a 60-1507 motion must contain factual allegations describing both the ways the legal representation fell below the constitutional standard of competence required under the Sixth Amendment to the United States Constitution and how the outcome in the criminal case probably would have been different with competent representation. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021). Here,

4

Booker's initial 60-1507 motion failed to set out any alleged facts and simply offered short, conclusory assertions of inadequate representation. That is insufficient as a matter of law. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018) (district court properly denied 60-1507 motion containing "only conclusory statements and incomplete facts" without holding evidentiary hearing); *Grossman*, 300 Kan. at 1062. Booker seemed to recognize the problem, based on his stated intent to supplement the motion and his repeated motions to amend.

On appeal, Booker offers two arguments as to why the district court erred in declining to consider the motions to amend. First, he says they should relate back to the original 60-1507 motion, meaning they can be treated as timely because of their legal relationship to that motion. In other words, they can piggy-back on the timely original motion even though they were filed well after the statutory one-year deadline. Second, he says he has shown "manifest injustice," thereby excusing his failure to file the motions to amend within the one-year time. See K.S.A. 2023 Supp. 60-1507(f)(2) (recognizing manifest injustice as extending one-year limitation on filing 60-1507 motion).

The standard for permitting relation back of a motion to amend or supplement an initial 60-1507 filing is much stricter than the one for typical Chapter 60 civil actions set out in K.S.A. 60-215. *Pabst v. State*, 287 Kan. 1, 24, 192 P.3d 630 (2008). The Kansas Supreme Court has followed the lead of the United States Supreme Court in applying an exacting standard for amendments to pleadings in federal habeas corpus proceedings. *Thompson v. State*, 293 Kan. 704, 711-14, 270 P.3d 1089 (2011); *Pabst*, 287 Kan. at 25-26 (recognizing relation back rule in *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562, 162 L. Ed. 2d 582 [2005], governing federal habeas corpus). An amendment to a 60-1507 motion, therefore, will relate back to the filing date of the original motion only if the additional claims share a common "time" and are of a common "type" with the original claims. *Thompson*, 293 Kan. at 714 (endorsing *Pabst*'s "time and type test"); *Pabst*, 287 Kan. at 25. The *Mayle* Court similarly held that the new habeas claims must arise from "a

common core of operative facts" to relate back to the filing of the original claims under the comparable procedural rule governing federal cases. 545 U.S. at 664. As those cases recognize, relation back will not be applied simply because all of the 60-1507 claims relate to the same trial. The Court specifically rejected that position in *Mayle*, as being far too broad. 545 U.S. at 661, 664. And *Pabst* took precisely that approach. 287 Kan. at 25-26. The *Thompson-Pabst* criteria of common time and type continue to provide the governing test. See *Meggerson v. State*, No. 125,498, 2024 WL 136660, at *5 (Kan. App. 2024) (unpublished opinion); *Cochran v. State*, No. 122,091, 2020 WL 6816336, at *3 (Kan. App. 2020) (unpublished opinion).

Booker's argument for relation back runs into an insurmountable obstacle. Because his initial 60-1507 motion consisted of nothing more than generic assertions without any descriptive detail, the motion defined no colorable claims by time or type. As a result, there were no anchors to which the series of amendments filed more than a year later could relate back. Accordingly, they remained untimely, and the district court properly declined to consider them for that reason.

A contrary rule would permit an individual to file a patently deficient 60-1507 motion—perhaps even one with no claims and only a promise to provide some later—at the last minute and then resuscitate it with amendments filed months or even years later. That would shred the one-year time limit in K.S.A. 2023 Supp. 60-1507(f)(1).

In *Wahl v. State*, 301 Kan. 610, 616-17, 344 P.3d 385 (2015), the court held that when the district court granted Duane Wahl 30 days to submit a memorandum supplementing his bare-bones 60-1507 motion filed several days before the one-year deadline, the allegations in the memorandum could be considered. Here, however, Booker neither sought nor received an order from the district court affording him a defined period to supplement his initial filing.

On appeal, Booker alternatively argues the one-year deadline should not be enforced because doing so would amount to a manifest injustice. K.S.A. 2023 Supp. 60-1507(f)(2). Under K.S.A. 2023 Supp. 60-1507(2)(A), manifest injustice is limited to either a showing of a compelling reason why the motion was filed after the one-year deadline or a supported claim of actual innocence. Booker's efforts to find refuge in those exceptions to the filing deadline fall short.

Booker submits his mental health prevented him from timely filing a sufficient initial motion. But he has provided nothing directly substantiating his claim. As we have mentioned, Booker has bipolar disorder, and years ago, he had resulting difficulties leading up to the trial in the criminal case. We suppose florid mental illness, depending upon the condition, could prevent someone from timely filing a 60-1507 motion, and we further suppose that might qualify as a manifest injustice permitting a late filing. Booker, however, has not shown he was debilitated in 2018 around the time he filed his initial 60-1507 or afterward. The motion itself, though deficient, cuts against his assertion. The motion is properly filled out with responsive, if general, statements corresponding to the required information. The responses are coherent and do not display disordered thinking. As we have already pointed out, Booker's declared intention to supplement the motion strongly suggests he was quite aware of what he was doing and, indeed, failing to do in filing the motion.

Booker also submits he lacked sufficient access to a law library to file a compliant 60-1507 motion. Again, however, he has provided no evidence corroborating any such deprivation. Moreover, the problem with the motion was not a lack of legal research; it was a lack of factual allegations and support for them. The form motion specifically directs the filer to "[s]tate concisely" facts that show he or she is being held in custody unlawfully and if a claim is based on inadequate legal representation, to "state . . . in detail what counsel failed to do in representing your interests." Nonetheless, Booker

7

described no particular ways he believed he had been poorly represented and simply declared he would be "filing amended information."

Turning to Booker's claim of actual innocence, he alleges the victim lied about being physically attacked in the parking lot and a security video from inside the mall would show he and the victim walking and talking together. He also suggests that crime scene investigators did not recover his fingerprints from the victim's car. The first two allegations amount to wholly unsupported speculation, and the third is a misleading characterization of the limited trial evidence about fingerprints.

As to the first, Booker offered nothing to even hint the victim was anything less than truthful. He has not produced a statement from her recanting her testimony or a declaration from someone to the effect she said she had lied. On this record, the assertion is, in a word, make-believe.

Booker claims there was a video from the interior of the mall that one of his lawyers or a private investigator saw and that the video has since been lost or destroyed. But Booker has not backed up his contention with any evidentiary materials. So the video is, at best, spectral. Even if there were such a video and it depicted what Booker described, the content would not advance his claim of innocence. A video showing him walking with or near the victim in the mall would be entirely consistent with and corroborative of her account of what happened. It would in no way disprove what then happened in the parking lot.

At trial, a police investigator testified he lifted partial fingerprints from the door of the victim's car and submitted them for comparison. A detective testified the partial prints were insufficient to make a reliable forensic comparison, meaning they could not be matched to anyone. The prints might have been Booker's, and they might not have been. That's qualitatively different from the recovered fingerprints definitively being from

someone else. And even that wouldn't appreciably advance his claim of innocence so much as showing he didn't leave recoverable fingerprints on the car.

Having examined the points raised on appeal, we find no error in the district court's determination to deny Booker's 60-1507 motion without an evidentiary hearing.

Affirmed.